Otho THOMPSON, Plaintiff-Appellee,

v.

Walter T. CAPPS, Warden et al.,
Defendants-Appellants.

No. 78-2765.

United States Court of Appeals,
Fifth Circuit.

Sept. 22, 1980.

Rehearing and Rehearing En Banc
Denied Nov. 3, 1980.

Sarah M. Greenhaw, Susan Beth Farmer, Milton E. Belcher, Asst. Attys. Gen., Montgomery, Ala., for defendants-appellants.

Delores R. Boyd, Montgomery, Ala., for plaintiff-appellee.

Before SIMPSON, HILL and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge.

Administrative officials and correctional officers at Kilby Correctional Facility in Montgomery, Alabama, appeal from a district court order requiring the Warden at Kilby to establish procedures for the identification and appropriate confinement of mentally disturbed prisoners. The action stems from a physical confrontation between inmate Otho Thompson and several correctional officers at Kilby. In addition to broad injunctive relief, the district court ordered the restoration of good time lost as a result of the confrontation, and awarded compensatory damages and attorney's fees to the inmate. Because the primary effect of the order is to require the prison Warden to implement the mandate of an earlier district court order, we affirm, except as to the liability of the handling officers.

### FACTS

After a stabbing altercation with another inmate at the Draper Correctional Facility on March 30, 1977, Thompson was transferred to Montgomery for medical treatment at a non-prison hospital. He was later sent to the hospital unit at Kilby Correctional Facility. Thompson was injured in physical confrontations with correctional officers while being transferred from Kilby's hospital unit to the segregation unit designated "A" Block. During the transfer, Thompson became belligerent and insisted that he not be taken to the segregation unit without an explanation from the Warden. The officers advised Thompson that the Warden was out of town and assured him that a meeting would be arranged upon the Warden's return. An altercation ensued from which Thompson received head injuries. He was immediately returned to the hospital unit, where his head laceration was closed with four stitches. When Thompson was removed to a cell at the segregation unit, another altercation occurred resulting in the reopening of the head laceration sustained less than one-half hour earlier.

Thompson was again taken to the hospital unit for treatment, after which he was confined in a holding cell in the hospital.

As a result of these incidents, a disciplinary board at the facility recommended that all of Thompson's good time be revoked, that he be placed in segregation for six-months, and that he be referred to social services for change of custody. The prison Warden and the Commissioner of Corrections concurred with the board's finding and the recommendations were implemented.

Thompson filed a pro se complaint pursuant to 42 U.S.C. § 1983, alleging an unprovoked assault by the officers, and charging the Warden with actionable negligence proximately resulting in his injuries. In a non-jury trial, the district court found that Thompson proximately caused the physical altercation resulting in his injuries. The court also found, however, that the prison officials should have been aware of Thompson's special emotional problems and should have taken particular measures to provide for his handling and confinement. The Warden was ordered to familiarize himself and all custodial personnel with the records of any mentally or emotionally disturbed prisoner, to establish appropriate places for confinement of mentally disturbed prisoners, and to "otherwise notify the wardens and custodial personnel at each facility of the requirements mandated in this case."

## ISSUES

The appellants argue that the district court's broad injunctive relief represents an unwarranted intrusion into the realm of prison administration, where no clear and extreme constitutional violation has been shown. They also assert that the order reinstating good time and the award of compensatory damages and attorney's fees constitute an unauthorized interference with the exercise of reasonable discipline in state prisons.

## DISCUSSION

### I

Appellants challenge the breadth of the district court order. According to appellants, the court lacked the authority to impose duties on prison officials at other institutions. We emphasize that this cause stems from a private action under 42 U.S.C. § 1983, and that it was never certified as a class action under Rule 23, Fed.R.Civ.P. The order of the district court, therefore, affects only this correctional facility, its officers, and this inmate. The district court ordered the Warden at Kilby to notify the wardens and custodial personnel at each Alabama penal facility of the requirements mandated in its injunctive relief. We do not interpret the order, however, to place an affirmative duty on other prison officials to adopt the procedures established at Kilby in response to the district court order. Even if this were the intent of the order, the duties it imposed were no broader than those which had been clearly mandated in the district court's earlier order in *Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala.1976), aff'd, 559 F.2d 283 (5th Cir. 1977). In *Pugh v. Locke*, the district court ordered the officials in *all* Alabama penal institutions to take adequate precautions and to provide special care to mentally disturbed inmates. The district court mandate provided as follows:

IV. *Mental Health Care.*

1. The defendants shall identify those inmates who, by reason of psychological disturbance or mental retardation, require care in facilities designed for such persons, and arrangements shall be made for the transfer of such inmates.

2. The defendants shall identify those inmates who require mental health care within the institution and make arrangements for the provision of such care.

3. The defendants shall hire at least those mental health professionals and support personnel as set forth in *Minimum Mental Health Standards for the Alabama Correctional System.* (Center for Correctional Psychology, University of Alabama, December 1972).

*Pugh v. Locke*, at 333. See also, *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57

L.Ed.2d 1114 (1978); *Newman v. Alabama,* 349 F.Supp. 278 (M.D.Ala.1972), *aff'd,* 503 F.2d 1320 (5th Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102.

The district court in this case issued a "permanent injunction" requiring the Warden at Kilby "to become familiar with and familiarize all custodial personnel with the records of any mental or emotional problems each prisoner who is in his custody may have." The order went on to require the Warden at Kilby "to establish and maintain appropriate places for confinement of emotionally and mentally sick prisoners."[1] This order places no burden on the Warden at Kilby other than that which had already been mandated in *Pugh v. Locke.* We therefore reject the appellants' contention that the order constitutes an unwarranted invasion into the discretionary domain of prison officials at the Kilby facility.

## II

■ Appellants argue that whatever the propriety of the injunctive measures, the district court had no authority to restore the inmate's good time, which had been revoked in accordance with the state's legitimate exercise of disciplinary measures to deter disruption and violence among prisoners. Prison discipline is generally a matter for prison authorities and not for the courts. Where constitutional infirmities exist, however, the prison deference rule will yield to the remedial power of the federal court. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Newman v. State of Alabama,* 503 F.2d 1320 (5th Cir. 1974). We have recently acknowledged that the revocation of an inmate's good time credit must be measured against constitutional requirements. *Keenan v. Bennett,* 613 F.2d 127 (5th Cir. 1980). In *Pugh v. Locke,* the district court found that the state prison system was unconstitutionally failing to provide adequate medical care for inmates de-

spite the previous mandate of the court in *Newman v. State of Alabama.* The prison officials' failure to implement the mandate of *Pugh v. Locke* is a constitutional deprivation which properly invoked the remedial power of the district court to impose appropriate relief. The restoration of good time in this instance, where the prison officials had failed to follow constitutionally prescribed and delineated guidelines, is an appropriate remedy.

■ The prison officials argue that notwithstanding any substantive justifications for the restoration of good time, the inmate's section 1983 action is barred, because no showing has been made of the exhaustion of remedies in the state courts. According to appellants, reinstatement of good time is in the nature of habeas corpus which requires the exhaustion of available state remedies. *Preiser v. Rodriquez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In their brief, the appellants do not contend that Thompson failed to exhaust state remedies on his constitutional claim. Instead, they argue that no exhaustion of state remedies has been shown "on the issue of whether sociopathic behavior is a defense to an administrative charge of assaulting officers." Even if that claim was not exhausted in the state courts, we have authority to review the claim of unconstitutional treatment under *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir. 1978). We held in *Galtieri* that where a district court "erroneously reaches the merits of an exhausted claim in a mixed petition and an appeal is taken from its dispositive order, we shall review the merits of the claim." *Galtieri,* at 362. Having agreed with the district court on the merits of the constitutional infirmity charge, we affirm on this issue.

■ Because we do not believe that correctional officers are bound by an independent duty to apprise themselves of the content of inmate medical records in the pos-

---

1. Counsel for appellants acknowledged at oral argument that the officials at Kilby have com-

plied with all the injunctive relief ordered in this case.

session of prison administration officials, we do not sustain the district court's judgment finding liability on the part of the correctional officers.[2] In all other respects, the district court judgment is AFFIRMED.

JAMES C. HILL, Circuit Judge, dissenting:

It appears that *Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala.1976), *aff'd*, 559 F.2d 283 (5th Cir. 1977), *modified on other grounds per curiam*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), creates rights cognizable under 42 U.S.C. § 1983 (1976). *Cf. Maine v. Thiboutot*, —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). I nonetheless dissent from the panel because, according to Judge Johnson, appellee's "irrational and violent behavior . . . proximately caused both physical altercations which resulted in personal injuries to him." R. 71. There being a complete failure of proof that alleged violations of *Pugh* either actually or proximately resulted in appellee's injuries, *cf. Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980), I would reverse the judgment.

---

**2.** The three officers who are absolved from liability are: J. W. Taunton, Correctional Sergeant; Leoneal Davis, Correctional Officer; and, Patrick Holliday, Correctional Officer.