Arthur GUTHRIE, et al., Plaintiffs,

v.

David C. EVANS, et al., Defendants.

Civ. A. No. CV 3068.

United States District Court,
S. D. Georgia,
Savannah Division.

Dec. 31, 1981.

Sanford D. Bishop, Jr., Columbus, Ga., C. Stephen Ralston, Steve Winter, New York City, Robert W. Cullen, Atlanta, Ga., for plaintiffs.

John C. Walden, Nicholas G. Dumich, Harrison Kohler, G. Thomas Davis, Atlanta, Ga., for defendants.

Drew Days, Chief Civil Rights Div., Paul Lawrence, Sp. Litigation, Dept. of Justice, Washington, D. C., amicus curiae.

## ORDER APPROVING STIPULATION OF THE PARTIES

ALAIMO, Chief Judge.

On November 13, 1981, the parties submitted a Stipulation resolving Plaintiffs' Motion for Issuance of Order to Show Cause and for Contempt Judgment, or in the Alternative, for Enforcement of the Court's Order of August 4, 1978, which had been filed on June 17, 1981. On the same day, this Court entered a preliminary order approving the agreement as to those who would be immediately benefitted and setting a hearing at which time other affected class members could be heard on any objections. Objections were heard on December 15, 1981. For the reasons stated below, these objections are overruled and the Stipulation agreed to by the parties is confirmed in all respects.

### I. *The Background of the Current Motion*

This is one of the older prison conditions cases. It was filed in September 1972 and alleged racial segregation and unconstitutional practices and conditions of confinement at the Georgia State Prison ("GSP"), the State's main maximum security facility located at Reidsville, Georgia. An amended complaint was filed and the class was certified in 1973. The prison was ordered desegregated in April 1974. The conditions issues went to trial before a Special Master in July 1976; the trial continued for 5 months over a one-year period ending in July 1977. Testimony covered the gamut typical of these cases: substandard environmental conditions; inadequate medical and psychiatric care; unconstitutional disciplinary practices; summary punishments and guard brutality; failure to protect from harm; racial discrimination in work assignments, imposition of discipline, and other prison practices; racially motivated verbal abuse; infringements on the rights of Muslim inmates; inadequate law library; lack of edu-

cational and vocational activities; interference with correspondence; etc.

The first of a series of consent decrees resolving these issues was signed on July 19, 1978. A second more comprehensive consent decree was signed on August 4, 1978. A final consent decree resolving all remaining issues except medical and psychiatric care and racial discrimination in discipline was signed on December 1, 1978.[1]

The comprehensive August 4 order contains the provisions concerning the operation of the GSP disciplinary system relevant to the instant motion. It includes limitations on the punishments which may be imposed and requires the State to comply with its own departmental regulation on disciplinary procedures. It recites the plaintiffs' allegation that these procedures had not been followed, but recognized that, as written, the regulations comport fully with the requirements of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

By Orders of Reference dated June 1 and June 20, 1979, the Court appointed a Special Monitor to assess compliance with the decrees, a procedural device previously approved by the Fifth Circuit in *Newman v. Alabama*, 559 F.2d 283, 290 (5th Cir. 1977).

The First Report of the Special Monitor was filed in November 1979, detailing extensive non-compliance in almost all areas. The Special Monitor found that the disciplinary system did not operate in a fair or impartial manner. He found that, *inter*

alia, the defendants were not providing inmates with adequate notice of the charges against them; inmates were not allowed to call witnesses; the disciplinary process was primarily designed to assess punishment and not to determine guilt or innocence; inmates were not represented by staff members either in complex cases or when the inmate was incapable of presenting his own defense; and that the appeal process was without substance. He found serious environmental hazards in disciplinary isolation and other areas of the prison.[2] He also found that the defendants had engaged in serious abuse of restricted bread and water diets as punishments.[3] On December 10, 1979, the plaintiffs filed a motion seeking immediate relief for these serious environmental hazards and seeking an immediate end to the use of bread and water diets as punishment. On January 7, 1980, the Court entered its order enjoining these conditions and practices.

Subsequently, the Court confirmed the First Report of the Special Monitor and ordered that:

"all of the named defendants, as well as their subordinates, proceed at once to effectuate full compliance with the Court's previous orders of November 26, 1976, July 19, 1978, August 4, 1978, December 1, 1978, and December 12, 1978."

*Guthrie v. Evans*, Civil Action No. 3068, Slip Op. at 2 (S.D.Ga. Feb. 11, 1980). It was not until April 20, 1981, however, that the

---

**1.** These latter issues were resolved by the Special Master's Report filed on October 9, 1979, and approved by this Court in most respects on November 27, 1979. The Special Master found no racial discrimination in the imposition of discipline. He did, however, find deliberate indifference in the provision of inadequate medical and psychiatric care in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976); *Newman v. Alabama*, 503 F.2d 1320 (5th Cir. 1974).

**2.** These environmental and health hazards included inadequate plumbing; sewage leaks; inadequate ventilation and lighting; numerous fire safety hazards, including lack of adequate fire exits; unhealthy food service, including the sliding of food under bars that were contami-

nated by sewage; lack of beds, bedding, and underwear; and lack of exercise.

**3.** The restricted diet regimen consisted of bread and water twice a day and one meal every three days. The August 4 consent decree insisted that restricted diet be used "rarely, if ever." It also required that GSP follow its own rules regarding medical examinations and vitamin supplements for those on restricted diet. The Court found, however, that restricted diets were being imposed routinely, that vitamin supplements had begun only on the eve of the hearing, and that medical examinations were not regularly made. Based on this record of abuse, the Court found that the August 4 order was being violated and enjoined the further use of restricted diet as cruel and unusual punishment.

offending practices were terminated and a new and agreed upon constitutional disciplinary system implemented at GSP. Following the implementation of the new disciplinary system, the plaintiffs filed the instant motion. Plaintiffs noted that despite the Court's order of February 11, 1980, the defendants continued to enforce the prior unconstitutionally operated disciplinary system without modification. They asserted that the inclusion of these unconstitutionally obtained disciplinary convictions in the inmates' institutional files constitute continuing violations of the August 4 and February 11 orders since these convictions continue to affect inmates' classification and their opportunities for parole. Moreover, they noted that forfeiture of earned time and time spent in non-earning status (time-out) were frequent disciplinary sanctions. These, too, constitute continuing violations, since the inmates' terms of incarceration were extended as a result of the unreliable and unconstitutional disciplinary convictions. Plaintiffs sought an order to show cause why the defendants should not be held in contempt or, in the alternative, an order enforcing the prior orders. The relief sought, or the purging of the contempt, was that the affected inmates would have their unconstitutional convictions expunged, the resulting forfeited earned time restored, and time spent in non-earning status credited.

## II. The Stipulation of Settlement

In a manner that has been characteristic of the progress in this lawsuit, the parties were able to reach agreement in settlement of the plaintiffs' motion. The defendants agreed to expunge all disciplinary convictions incurred by GSP inmates between August 4, 1978, and April 20, 1981. For this purpose, the affected class was divided into three groups: non-serious offenders, serious offenders who pleaded not guilty, and serious offenders who pleaded guilty.[4] Non-serious offenders are to have all disciplinary convictions during this period expunged, all

earned time forfeited restored, and all time-out credited. Because of the overwhelming burden that would be caused by manual expunction, the parties agreed to a statement of expunction to be inserted in the inmate's institutional and departmental files and to be provided to the Parole Board. This statement explicitly notes that the convictions have been expunged, earned time restored, and the department's computer records adjusted accordingly. It also specifies the purpose for which the expunged convictions may not be considered—i.e., transfer, classification, eligibility for parole, etc.

Serious offenders who pleaded not guilty are subject to retrial under the new and constitutional disciplinary system put into effect in April. If found guilty, the original penalties may be confirmed but no new sanctions imposed. All inmates whom the defendants do not retry will have their convictions expunged and earned time lost restored. The statement of expunction noted above will be used.

Serious offenders who pleaded guilty are also subject to retrial. If the state does not elect to sustain their earlier convictions, however, they will only be credited with 50% of the earned time lost. Nevertheless, all convictions will be expunged; they will not be usable for any other purpose. A statement of expunction which reflects these facts will be employed. Because it is understood that some inmates may have pleaded guilty because of the known unfairness of the prior disciplinary procedures and not because of actual guilt, these inmates are also provided with an election by which they may obtain 100% of the earned time lost. If they choose, they may obtain a hearing before an independent hearing officer selected by the Special Monitor. At that hearing, the inmate must establish that his guilty plea was involuntary and that reasonable doubt exists with respect to his guilt for the offense for which he was punished. If he prevails, the conviction is

4. A serious offender, for the purpose of the Stipulation, is defined as any inmate who received one sanction of 180 days or more of time-out for a single offense or who was convicted at 6 or more hearings during the relevant period.

expunged and all earned time restored. If he does not, the original punishment will be confirmed.

The Stipulation also provides that all minor offenses incurred during this period will be expunged; although these minor offenses did not engender loss of earned time, they do affect classification, assignment, parole, etc. The Stipulation also contains numerous provisions to provide for procedural regularity in its effectuation and to ensure that all affected inmates are promptly identified. Finally, it provides that the agreement is in full settlement of the issues raised in the plaintiffs' motion and that, upon issuance of a final order by this Court, that motion shall be withdrawn with prejudice.

### III. The Reasonableness of the Terms of Settlement

Fed.R.Civ.P. 23(e) requires the Court to approve all compromises in class actions to protect the rights of the absent class members. Pursuant to the November 13, 1981, order, notice was provided to all Georgia prison inmates by posting of a form of notice together with a copy of the Stipulation in all housing units of the Georgia prison system. Objecting class members were given an opportunity to file written objections and to be heard at a hearing which was held on December 15, 1981.

The standard governing the Court's task is clear.

> "[T]he standard used by the courts in evaluating a compromise is that the proposal must be fair and reasonable and in the best interest of all those who will be affected by it."

7A Wright & Miller, *Federal Practice and Procedure* Civil § 1797 at 229 (1972). *Accord, Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("fair, adequate, and reasonable and . . . not the product of collusion."); *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) (same). *See also United States v. City of Miami*, 614 F.2d 1322, 1330–34 (5th Cir. 1980) (not unconstitutional, unlawful, or unreasonable). One important factor is the relief that the plaintiffs would have been

likely to obtain had they not settled, although the Court must keep in mind that the settlement is a compromise. *Cotton, supra; Young, supra.* Thus, the Court must undertake two essential inquiries. The first is whether the relief obtained is fair and adequate vis-a-vis what might have been obtained through litigation. The second is whether the compromises effected are reasonable and do not prejudice absent class members.

The legal parameters of the relief available in this area are only first emerging. In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Court held that a state prisoner could not initiate a suit under 42 U.S.C. § 1983 to restore good time lost as a result of unconstitutional disciplinary proceedings. This ruling, however, was merely procedural. The Court did not cast doubt on the availability of the relief; it only indicated that *habeas corpus*, with its exhaustion requirement, was the appropriate procedure. The *Preiser* ruling, however, does not control here because of the very different procedural posture of the current motion. *Preiser* concerns the initiation of a lawsuit seeking restoration. In that context, considerations of federal-state comity require that state authorities be given the opportunity to correct these problems in the first instance. *Habeas* with its exhaustion requirement affords that opportunity.

Here, in contrast, there is already an ongoing case properly brought in federal court under 42 U.S.C. § 1983 which has produced numerous orders concerning the operation of the prison, generally, and the disciplinary system, specifically. Thus, the issue is not whether the state should be given an initial opportunity to see that its disciplinary procedures are constitutionally adequate, but whether the Court's duly entered orders are being complied with. In this context, comity considerations are only marginally implicated, since the federal district court has already properly exercised jurisdiction. Moreover, there is a compelling federal interest in the enforcement of the court's own decrees. The Supreme Court

"has repeatedly recognized the power of a federal court to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977) (power under the All Writs Act to compel actions by nonparties).

The Fifth Circuit Court of Appeals has recognized this principle in a factually similar case. In *Thompson v. Capps*, 626 F.2d 389 (5th Cir. 1980), the court upheld the restoration of good time in a § 1983 suit. There, the inmate brought an independent § 1983 action alleging that he received a disciplinary conviction in violation of certain orders previously entered by Judge Johnson in *Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala.1976), and that he lost good time as a result. Judge Johnson ordered the good time restored and the Court of Appeals affirmed.

> "The prison officials' failure to implement the mandate of *Pugh v. Locke* is a constitutional deprivation which properly invoked the remedial power of the district court to impose appropriate relief. The restoration of good time in this instance, where the prison officials had failed to follow constitutionally prescribed and delineated guidelines, is an appropriate remedy."

626 F.2d at 392. Although the Court did not dispose of the *Preiser* exhaustion requirement in any definitive way, *id.*, it did clearly affirm the power of a district court to issue restoration orders in effectuation of its prior decrees.

If anything, the instant case is on firmer ground than *Thompson*. There, the affected inmate proceeded by way of an independent action. Here, however, the inmates properly invoked the contempt powers of this Court by seeking compliance with prior orders in this case. This very procedure was invoked in *Powell v. Ward*, 487 F.Supp. 917 (S.D.N.Y.1980), *aff'd*, 643 F.2d 924 (2d Cir. 1981), where the court granted plaintiffs' motion for contempt based on violations of that court's 1975 order regarding disciplinary procedures and ordered the expunction of all disciplinary convictions so obtained. Although it is not expressly noted in the opinion, these expunctions in fact resulted in the restoration of the good time lost. *See Id.*, 487 F.Supp. at 935 and n.16.

The contempt posture is of crucial importance here for another reason: it dictates the adequacy of the relief accorded. Plaintiffs' motion was addressed to the continuing contempts of relying upon unconstitutionally obtained disciplinary convictions in making decisions related to classification, transfer, and parole and of longer terms of incarceration because of the unconstitutionally forfeited earned time. *Id. Cf. Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979) (independent right to expunction of erroneous data in inmate's file which is relied upon to a constitutionally significant degree). Any relief afforded is adequate as long as it includes the purging of these contempts; a showing that particular hearings were conducted in a fair and constitutional manner or new hearing so conducted would suffice.

With these principles in mind, the objections heard at the December 15, 1981, hearing may be disposed of. The objections, which were not numerous, fall into five basic categories. The first is best described as a misunderstanding on the part of the objectors. These inmates have addressed correspondence to the Court which, although denominated "objections," simply requests that specified convictions obtained at GSP during the relevant period be expunged and the earned time lost restored. They will, of course, be taken care of in the effectuation of the Stipulation. These "objections" are therefore obviated.

■ The second category consists of those inmates who were not at GSP during the relevant period, but received disciplinary convictions at other Georgia facilities. These inmates object to the fact that the Stipulation does not cover all Georgia institutions. These objections are overruled. These institutions were not part of the *Guthrie* case, were not covered by the August 4, 1978, and February 11, 1980, orders,

and so could not have been included in the original motion seeking contempt and enforcement.

█ The third consists of the objections of two inmates to the manner of expunction agreed to by the parties. They argue that nothing less than actual, manual expunction will be effective. These objections, too, are overruled. The objections on their face indicate that the objectors were not GSP inmates and not part of the class; they have no standing. However, even if such an objection were made by a proper party, the Court would overrule it. Manual expunction would place an impossible burden on the defendants; it is likely that they would not have agreed to the Stipulation if they had to take on this administratively overly burdensome task. While insertion of the statement may not be as foolproof as actual expunction, it is a reasonable alternative. This Court is mindful that "inherent in compromise is a yielding of absolutes and abandoning of highest hopes ..." and that in assessing the adequacy of settlement the "court is entitled to rely upon the judgment of experienced counsel for the parties ..." and "should be hesitant to substitute its own judgment for that counsel." *Cotton, supra,* 559 F.2d at 1330. Moreover, the rights of all class members will be protected in this regard since any failure to honor the expunction can be cured by application for an appropriate order. *See* 28 U.S.C. § 1651; *United States v. New York Telephone, supra.*

█ The fourth category of objections relates to the distinction drawn between serious and nonserious offenders for purposes of the state's election to retry. These inmates object on the grounds that the distinction is arbitrary, that everybody should get all earned time back,[5] and that either everybody should be reviewed for possible retrial or no one should. This objection too is overruled. The relief would be adequate if all inmates were retried in a fair and constitutional manner and no earned time were actually restored. That the defendants have agreed to unconditionally credit earned time to some inmates is a boon and does not prejudice the rights of other class members. Moreover, the distinction is not arbitrary; it is based on an assessment of the needs of prison discipline which is something to which the Court and all parties must be sensitive. *See Newman, supra,* 559 F.2d at 287. In sum, it is a reasonable and fair compromise and is approved.

█ The fifth objection was made by a single inmate and relates to the fact that he forfeited certain money as a result of a disciplinary conviction now expunged. Presumably, he objects to the failure of the Stipulation to specifically provide for the return of this money. The Court, however, does not understand the Stipulation to preclude this type of claim by a class member. First, the Stipulation only settles "the issues raised in Plaintiffs' Motion," and the matter of monetary restitution was not amongst them. Second, it would appear that the expunction of the underlying disciplinary conviction provided for in the Stipulation would give the individual inmate grounds upon which to seek such restitution.[6] Finally, it would seem that the restitution claim is already covered by a prior ruling in state court which held that such forfeitures are not permissible under Geor-

---

5. It is unclear whether this portion of the objection refers to the restoration of only 50% of earned time lost by those serious offenders who pleaded guilty. If it does, that objection too is overruled. The 50% restoration is reasonable in light of the fact that some inmates will plead guilty because they do not contest the fact that they committed the disciplinary offense charged. This has occurred under the new procedures as well. More important, whatever the possible inadequacy of the 50% restoration, it is cured by the inmates' right to elect a hearing before an independent hearing officer and to obtain 100% of the time lost. Indeed, the burden in that hearing—the inmate need only show that there is a reasonable doubt as to whether he committed the offense—is more favorable to the inmate than the burden at the original disciplinary hearing.

6. Given the defendants' good faith efforts to resolve this issue, the Court sees no reason to assume that the matter of monetary forfeitures will not be corrected by the state when presented with it by the inmate[s] involved.

gia law. *Balkcom v. Heptinstall*, 152 Ga. App. 539, 263 S.E.2d 275 (1979), *appeal dismissed*, 245 Ga. 567, 267 S.E.2d 623 (1980). Accordingly, the Court overrules this objection, subject to the inmate's continued right to seek appropriate relief.

### IV. *Conclusion*

In sum, the Court finds that the Stipulation is a full, fair and adequate settlement of the plaintiffs' motion. This conclusion is bolstered by the fact that the relief afforded by the Stipulation is a necessary complement to the prior orders in this case. The August 4, 1978, order requiring constitutional disciplinary procedures, the January 7, 1980, order ending bread and water diets and bringing physical conditions of disciplinary isolation up to constitutionally mandated minima, and the April 20, 1981, order, instituting a new, fair and constitutional disciplinary system, were all geared to cure systemic deprivations at GSP. What was saliently absent was the personalization of the relief to the affected class, the GSP population. What the Stipulation agreed to by the parties accomplishes is to bring the rule of law to GSP in a way that actually compensates individuals, at least in part, for the deprivations they have suffered. The Court is pleased to confirm this result, and wishes to commend the parties for their diligence and good faith in achieving and effectuating this Stipulation.

The Stipulation agreed to by the parties is hereby confirmed as full, fair, and adequate settlement of the substantive issues raised in plaintiff's motion. The terms of the Stipulation are hereby incorporated and made an order of the Court. Plaintiffs' motion is also hereby deemed withdrawn.[7]

---

7. Despite the technical withdrawal of the motion, as provided for by the terms of the Stipulation, it is clear that the plaintiffs have substantially achieved the relief sought.