865 F.2d 1268
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gabb Lee MITCHELL (87-5574), Clarence Washington (87-5616),
James Ronnie Blanchard (87-5632), Hugh Briggs
(87-5638), Charles E. Smith (87-5647),
Plaintiffs-Appellants,
v.
Michael DUTTON, Bobby Campbell, Robert Turner and Stephen
Norris, Defendants-Appellees.
 Nos. 87-5574, 87-5616, 87-5632, 87-5638 and 87-5647.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr. and RYAN, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiffs, prisoners in the Tennessee State Penitentiary, filed civil rights actions against defendants, prison officials in Tennessee, pursuant to 42 U.S.C. Sec. 1983. The plaintiffs individually alleged they either lost their job or were denied a job in prison on the basis of racial discrimination. The district court consolidated their five cases with another previously filed case also alleging discrimination in the Tennessee prison system. The district court subsequently certified the previously filed action as a class action suit, and approved a settlement offered by the parties. The five plaintiffs in this action, who were members of the class certified in the previously filed case, filed appeals from the dismissal of their individual suits which resulted from the class action settlement.[1] Plaintiffs allege that the district court erred in consolidating their cases and in foreclosing their claims for monetary damages upon entry of final judgment in the class action. Upon review, we find that the district court did not abuse its discretion either in consolidating the cases or in approving the class action settlement entered into by the parties.
 
 I.
 
 2
 Plaintiffs are black inmates incarcerated in the Tennessee State Penitentiary. Plaintiffs Blanchard, Washington, and Mitchell filed individual actions against various prison officials in January 1986, alleging that they lost their jobs in the prison dining room in July or August 1985, as a result of racial discrimination. Plaintiff Briggs filed a similar action in March 1986. There was a riot at the prison beginning on July 1, 1985, which completely destroyed the kitchen and main dining room. As a result of the riot, many of the inmate kitchen workers were laid off. Prior to the riot, the majority of the kitchen workers were blacks. Plaintiffs allege that they lost their jobs and were not rehired pursuant to a prison administrative directive which mandated racial balance within the food service department in the rehiring of inmates laid off after the riot. The fifth inmate-plaintiff, Charles Smith, filed his complaint July 9, 1985, alleging that prison officials chose a white inmate as a law clerk despite Smith's having been on the waiting list since September 1983. Smith alleged that the prison officials were motivated by racial discrimination in denying his application for law clerk.
 
 
 3
 Defendants in these five actions included the warden, associate warden, assistant food service manager, commissioner of the department of correction, several guards, and others. Plaintiffs were requesting a variety of relief, including injunctive relief, declaratory judgments, compensatory damages, punitive damages, costs, and restoration of former employment.
 
 
 4
 At the time plaintiffs filed their complaints there was another prison case alleging racial discrimination pending in the district court in Tennessee. Jimmy Lee Tuggle and Robert L. Williams v. Ernest Pellegrin, Commissioner of Department of Corrections, No. 3-83-1009 and No. 3-84-0260 (Tuggle case). The Tuggle case was filed by black inmates alleging racial discrimination in cell and work assignments, and in imposition of disciplinary sanctions. The defendants in Tuggle are prison officials in the Tennessee prison system. The Tuggle case was filed in 1983, and there was a motion pending, submitted by the Tuggle plaintiffs, requesting certification of the case as a class action. Settlement conferences were held in Tuggle in early 1986, and by May 1986 the parties had reached agreement on a settlement draft.
 
 
 5
 On June 6, 1986, the Tuggle defendants submitted a motion to consolidate numerous cases pending against the defendants with the Tuggle case. The five cases filed by the plaintiffs in this appeal were among those requested to be consolidated. The Tuggle defendants also submitted the settlement draft to the district court for approval. The court approved the consolidation and the settlement as a draft plan.
 
 
 6
 In January 1987 three of the plaintiffs in this action filed objections in the district court to the proposed Tuggle settlement. The court held hearings on the fairness of the proposed settlement in February and March 1987. The five plaintiffs were all present at the three hearings during which testimony was taken on the questions of class certification and the fairness of the proposed settlement. The plaintiffs were permitted to cross-examine defendants' witnesses. At the third hearing, all five of the plaintiffs individually addressed the court on their objections to consolidation, class certification, and settlement.
 
 
 7
 On May 6, 1987, the district court approved the settlement draft as the judgment of the court. (App. at 4). The settlement order certified the action as a class action composed of all black inmates who were under the jurisdiction of the Tennessee Department of Corrections at any time from October 24, 1982, to the date of entry of the order. The class was certified as a mandatory class pursuant to Fed.R.Civ.P. 23(b)(2). In the settlement, defendants did not admit to any discriminatory practices, but agreed basically to not consider race as a factor in making cell or job assignments. The parties also agreed to refer claims for injunctive relief to the special master appointed by the court in Grubbs v. Bradley, 552 F.Supp. 1052 (M.D.Tenn.1982).[2] The settlement also outlined a plan for prison job identification and classification. According to the terms of the order, in full and final settlement of all relief requested by the class members, defendant agreed to award "Prisoner Performance Sentence Credits" to those inmates who were either denied a job or lost a job due to racial discrimination. The settlement detailed the procedure to be followed to obtain these sentence credits. The court termed the settlement a final appealable order, and all five plaintiffs filed timely appeals. This court consolidated these cases for purposes of briefing and argument.
 
 II.
 
 8
 Plaintiffs' first issue on appeal is that the district court erred in consolidating their five cases with the Tuggle case. The trial court is given the power to consolidate cases under Fed.R.Civ.P. 42(a) which provides:
 
 
 9
 (a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
 
 
 10
 An exercise of this power by the trial court may be reviewed on appeal after a final judgment or order in the case. However, the trial court's decision will not be disturbed except for an abuse of discretion. Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir.1985); Air Crash Disaster v. Eastern Air Lines, Inc., 549 F.2d 1006, 1013 (5th Cir.1977).
 
 
 11
 Plaintiffs argue, however, that their cases did not involve issues of fact or law common to the issues in Tuggle, and therefore it was an abuse of discretion to consolidate the cases. Tuggle involved an action by Jimmy Lee Tuggle, a black inmate in the Tennessee prison system. Tuggle sued various prison officials for alleged violations of the fifth, sixth, eighth, thirteenth, and fourteenth amendments, and brought suit pursuant to 42 U.S.C. Secs. 1981, 1983, 1985, 1986, 1988 and 2000d. Tuggle was seeking declaratory and injunctive relief, and also damages, for the denial of prison employment on the basis of racial discrimination, for residential racial segregation, and for disparate disciplinary sanctions based on racial considerations. The five plaintiffs in this appeal are also black inmates in the Tennessee prison system, suing prison officials nearly identical to the defendants in Tuggle. Although the plaintiffs allege specific instances of discrimination, the issue of whether or not defendants discriminated in the allocation of inmate employment opportunities is the same in all five of the plaintiffs' cases and in Tuggle. Kozlowski v. Coughlin, 539 F.Supp. 852, 854 (S.D.N.Y.1982). Separate discovery on the same issue of discrimination in each of these suits would have involved unnecessary expense, and repetition of efforts. See Hendrix, 776 F.2d at 1495. Furthermore, had plaintiffs been permitted to proceed with their individual suits, their individual remedies could have resulted in confusion and inconsistencies in the Tennessee prison system. Groseclose v. Dutton, 829 F.2d 581 (6th Cir.1987); see also Gillespie v. Crawford, 858 F.2d 1101 (5th Cir.1988).
 
 
 12
 The district court's decision to consolidate these cases was a discretionary exercise of its managerial power. A district court has the power to order consolidation despite the objections of parties. Air Crash Disaster, 549 F.2d at 1013. We find that the issues in the plaintiffs' cases were similar enough to the issues in Tuggle to conclude that the district court did not abuse its discretion in consolidating the cases.
 
 
 13
 Nor do we find any merit in the plaintiffs' contention that the cases should not have been consolidated because they were at different stages in the litigation process and these plaintiffs had not pursued full discovery. To allow plaintiffs to complete discovery before consolidating these cases would have defeated the primary purposes of consolidation, namely promoting judicial economy and expediting litigation. United States v. City of Chicago, 385 F.Supp. 540, 543 (N.D.Ill.1974). Consolidating the cases did not cut off plaintiffs' rights to discovery. Consolidation served the purpose of economy in case administration, but did not merge the suits into a single action. At the time of consolidation, the suits retained their separate identities, and plaintiffs were therefore not deprived of any substantial rights. Johnson v. Manhattan Ry. Co., 289 U.S. 479 (1932); Miller v. United States Postal Service, 729 F.2d 1033, 1036 (5th Cir.1984); Kraft, Inc. v. Teamsters Local 327, 683 F.2d 131, 133 (6th Cir.1982). Plaintiffs' ability to conduct discovery did not end until the court, subsequent to the consolidation, granted defendants' motions for a protective order from discovery, or requests for a stay of responsive pleadings, in the individual plaintiffs' cases.
 
 III.
 
 14
 Plaintiffs assert as their second issue on appeal that the district court erred in foreclosing plaintiffs' claims for monetary and other relief when approving the settlement draft as the final judgment. Subsequent to consolidation, the district court certified the Tuggle case as a class action pursuant to Fed.R.Civ.P. 23(b)(2) which states:
 
 
 15
 (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 
 
 16
 .............................................................
 
 
 17
 ...................
 
 
 18
 * * *
 
 
 19
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; ...
 
 
 20
 The members of the class were defined so as to include the five plaintiffs in this appeal. Lawsuits alleging class-wide discrimination are particularly well suited to 23(b)(2) treatment since "the common claim is susceptible to a single proof and subject to a single injunctive remedy." Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir.), cert. denied, 429 U.S. 870 (1976). The class here is homogeneous, and the discrimination is claimed in all instances to be on the basis of the common characteristic, the race of the plaintiffs. See Alexander v. Aero Lodge No. 735, International Ass'n of Machinists, 565 F.2d 1364, 1372 (6th Cir.1977), cert. denied, 436 U.S. 946 (1978). Although the primary relief sought by a Rule 23(b)(2) class is equitable, plaintiffs' requests for monetary damages did not preclude their certification as members of the class. Alexander, 436 U.S. at 1372; Senter, 532 F.2d at 525. If the primary relief sought is injunctive or declaratory, and the monetary relief requested can be characterized as incidental or equitable, Rule 23(b)(2) can be applied. Probe v. State Teachers' Retirement System, 780 F.2d 776, 780 (9th Cir.), cert. denied, 476 U.S. 1170 (1986). Here plaintiffs were primarily requesting a return to their former jobs, so the monetary relief can be characterized as incidental to this request, permitting the certification of the consolidated class as a Rule 23(b)(2) class.
 
 
 21
 Plaintiffs argue that they have suffered significant deprivations which should be redressed with monetary damages. However, plaintiffs face a significant eleventh amendment hurdle in attempting to obtain damages from these defendants. Edelman v. Jordan, 415 U.S. 651 (1974). Plaintiffs are suing state prison officials to obtain monetary relief for actions by prison officials that were within the scope of their administrative duties. The eleventh amendment bars this suit if the state is the real and substantial party in interest, meaning that plaintiffs are seeking to impose a liability which must be paid from public funds in the state treasury. Id. at 663; Ford Motor v. Dept. of Treasury, 323 U.S. 459, 464 (1945). Due to the uncertainty of being able to obtain monetary relief, we find no error in the district court's certification of the class as a Rule 23(b)(2) class.
 
 
 22
 Plaintiffs further argue that they should have been permitted to opt out of the class. However, there is no right to opt out of a 23(b)(2) class. Laskey v. UAW, 638 F.2d 954, 956 (6th Cir.1981). The consolidated cases were made a 23(b)(2) class instead of a 23(b)(3) class which permits opting out because the case was susceptible to a single proof and single injunctive remedy.[3] Therefore, to permit opting out would defeat the very reasons for which the class was certified.
 
 
 23
 Plaintiffs also allege that the settlement provided an incomplete adjudication of their claims because the settlement did not provide monetary damages. The certification of the action as a 23(b)(2) class did not preclude plaintiffs' monetary claims. However, these claims for monetary damages were extinguished by the settlement order.
 
 
 24
 These five plaintiffs were not the only members in the Tuggle class seeking monetary damages. The settlement order, in extinguishing all monetary claims, alternatively provided for broad injunctive relief and the ability to obtain Prisoner Sentence Reduction Credits (PSRC) and Prisoner Performance Sentence Credits (PPSC). These sentence credits, established by Tennessee statutes, provide a means for inmates to earn days off their sentence expiration date and release eligibility date by participating in a work, education, or vocational program. By the terms of the settlement order, class members can obtain the benefit of credits that they would have received since the time they were denied a job or lost a job for racial reasons. However, in Tennessee, inmates serving sentences for certain offenses, such as habitual criminal, are statutorily ineligible to receive sentences credits. See, e.g., TENN.CODE ANN. Secs. 39-1-806 and 40-28-116 (1982). Plaintiffs argue that for at least three of them, who are subject to long-term incarceration, for multiple offenses, sentence credits offer no realistic benefit.
 
 
 25
 The district court approved the settlement draft submitted by the parties in accordance with Fed.R.Civ.P. 23(e) which provides:
 
 
 26
 (e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.
 
 
 27
 The court approved the settlement draft in May 1986. The court previously held hearings, as required, on whether the settlement was fair, adequate and reasonable. Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir.1983). Where the district court has approved a settlement as fair, adequate and reasonable, our standard of review is abuse of discretion. Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir.), cert. denied, 459 U.S. 828 (1982); Franks v. Kroger Co., 649 F.2d 1216, 1224 (6th Cir.1981); Metropolitan Housing Dev. v. Village of Arlington Heights, 616 F.2d 1006, 1015 (7th Cir.1980). A district court need not withhold approval of a settlement merely because some class members object to its terms.[4] Harris v. Pernsley, 654 F.Supp. 1042, 1050 (E.D.Pa.), aff'd, 820 F.2d 592 (3rd Cir.1987); Bronson v. Board of Education, 604 F.Supp. 68, 73 (S.D.Ohio 1984), cert. denied, 56 U.S.L.W. 3338.
 
 
 28
 In evaluating the settlement draft, the district court must also consider and weigh "the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." Carson v. American Brands, Inc., 450 U.S. 79, 88 (1981). An inmate's constitutional rights may be restricted by a prison regulation provided the restriction is reasonably related to a legitimate penological interest and the restriction is no greater than is necessary to protect the particular interest involved. Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987); Bell v. Wolfish, 441 U.S. 520 (1979). Here, following a prison riot, which was motivated at least partially by racial tensions, plaintiffs face a difficult task to show that prison officials did not have a legitimate penological interest in rehiring inmates pursuant to a racially balanced format. See also Washington v. Lee, 263 F.Supp. 327, 331 (M.D.Ala.1966), aff'd, 390 U.S. 333 (1968).
 
 
 29
 Our review of this settlement concludes that the district court did not abuse its discretion in approving the settlement. That defendants have agreed to give sentence credits to eligible inmates does not prejudice the rights of these five plaintiffs. See Guthrie v. Evans, 93 F.R.D. 390, 396 (S.D.Ga.1981). Considering the broad equitable relief this settlement provides, plaintiffs may well be getting more relief than they would have if their individual cases had progressed through trial.
 
 
 30
 In conclusion, we find no error in the district court's decisions to consolidate the cases and approve the class action settlement. Accordingly, we AFFIRM.
 
 
 
 [1]
 The district court did not enter an order of dismissal on their individual docket sheets but entered an order accepting the fifth draft of the settlement offered in the class action. This settlement extinguished the plaintiffs' suits and therefore the entry was tantamount to a dismissal
 
 
 [2]
 Grubbs v. Bradley is a class action suit brought by representatives of a class consisting of inmates in the Tennessee adult penal system against numerous prison officials. The suit challenged the constitutionality of several practices and conditions of confinement in the prison system. The court agreed with the plaintiffs that certain conditions of confinement and lack of adequate medical care amounted to cruel and unusual punishment in violation of the eighth and fourteenth amendments to the United States Constitution. The court provided for the appointment of a special master to oversee the development of plans for correcting the constitutional violations, and to report to the court on the advisability of implementing the plans
 
 
 [3]
 The result that plaintiffs desired could have also been obtained by permitting plaintiffs to form a subclass under 23(c)(4) for trial of their monetary claims. There is evidence in the record that the district court considered this option. The plaintiffs do not raise this issue on appeal
 
 
 [4]
 Defendants estimate that the entire class numbers over 3,000 inmates. They received approximately nine objections