Johnny FORTNER, Plaintiff–Appellant,

Tony Anderson, Plaintiff,

Paul J. Tyner, Plaintiff–Appellant,

Darrell Phillips, Johnny Sorey, and James McClendon, Plaintiffs,

v.

A.G. THOMAS, Warden, Thomas Byrd, Executive Assistant and Donnell Lewis, Hearing Officer, Defendants–Appellees.

No. 90–8924.

United States Court of Appeals, Eleventh Circuit.

Feb. 18, 1993.

---

James Elliott, Savannah, GA (court-appointed), for plaintiffs-appellants.

John C. Jones, State Law Dept., Atlanta, GA, for defendants-appellees.

Before HATCHETT, Circuit Judge, HENDERSON and ESCHBACH *, Senior Circuit Judges.

HATCHETT, Circuit Judge:

As a matter of first impression in this circuit, we hold that a prisoner retains a constitutional right to bodily privacy. We

remand this case to the district court for application of the test announced in *Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987), to determine whether the prison regulations unreasonably impinge on the prisoners' constitutional rights to bodily privacy.

PROCEDURAL BACKGROUND

The appellants, male inmates at Georgia State Prison, appeal the dismissal of their 42 U.S.C. § 1983 action, alleging that the appellees, several correctional officials, violated their constitutional rights of privacy and due process. For the alleged violations of their constitutional right of privacy, the appellants seek monetary damages and injunctive relief prohibiting female correctional officers from assignments that allow the officers to view the appellants nude in their living quarters, including their use of the showers and the toilet. The appellants also seek monetary and injunctive relief for the alleged violations of their rights to due process relating to disciplinary proceedings that occur when the female correctional officers charge them with indecent exposure, obscene acts, and insubordination.

On October 20, 1989, the appellees filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(a), asserting qualified immunity. On November 14, 1989, the appellants filed a first amended complaint in response to the appellees' motion to dismiss, seeking to add two disciplinary hearing officers as "key players" in the violation of their due process rights. On September 14, 1990, the district court adopted the report and recommendation of a magistrate judge, and dismissed the appellants' right to privacy claims on the grounds of qualified immunity and the due process claims based on the consent orders entered in *Guthrie v. Evans*.

In their complaint, the appellants claim that this controversy began anew when prison authorities began assigning female correctional officers to duties in the living

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by     designation.

quarters of male inmates. The appellants claim that the female officers act unprofessionally when they view nude male inmates walking around in undershorts, showering, and using the toilet. The appellants claim that the female officers flirt, seduce, solicit, and aroused them to masturbate and otherwise exhibit their genitals for the female officers' viewing. The appellants also claim that the female officers file false disciplinary reports for obscene acts and insubordination in order to avoid reprimand when other prison authorities discover them engaged in such unprofessional activity. The appellants describe the relevant facilities in their living quarters at the Georgia State Prison. The appellants claim that the female officers file the disciplinary reports after spying on them through a one-inch crack in their cell doors, or after looking at them in the shower through a five by ten-inch window on the shower door.

In this complaint, the appellants also complain that the appellees have violated Policy Statement 590.1, which governs inmate discipline. The appellants claim that disciplinary officers improperly punished them with severe isolation and segregation sanctions, instead of the appropriate punishments for the moderate offenses of exposure, exhibition, and obscene actions. The appellants also claim that the female officers wrongfully charged them with insubordination, a high severity charge, instead of the proper exposure, exhibition, and obscene action offenses. Additionally, the appellants claim that the female officers' false disciplinary reports resulted in isolation and segregation sanctions being imposed ninety-nine percent of the time, even though the disciplinary proceedings occurred without the benefit of physical evidence, witness testimony, proper notice, or the presence of the charging officer. The appellants detailed the disciplinary process at the Georgia State Prison in their motion to amend the complaint, summarizing the charges in several disciplinary reports and also describing the disposition of the matters.

## ISSUES AND CONTENTIONS

The appellants contend that the district court erred in denying their November 14, 1989 amendment to the complaint adding the disciplinary hearing officers as additional defendants. The appellants argue that the district court committed clear error in denying their right to amend their complaint at least once as a matter of course before the appellees filed a responsive pleading. The appellants also contend that the district court dismissed their complaint improperly based on a finding that the appellees are entitled to qualified immunity. The appellants argue that the district court erred in determining that the female officers did not violate a clearly established right, because the generalized constitutional right to privacy was clearly established at the time. In addition, the appellants contend that the district court erred in dismissing their due process claims based on the consent orders entered in *Guthrie*. The appellants argue that their complaint seeks both injunctive relief and monetary damages which makes a contempt proceeding under *Guthrie* an inadequate remedy for their claims.

The appellees respond that the district court properly denied the appellants' motion to amend because their motion to dismiss constituted a responsive pleading within the meaning of rule 15(a); and also contend that the district court properly concluded that qualified immunity shields them from the appellants' right to privacy claims, and that the due process claims are precluded under *Guthrie*. We address each of these issues separately.

## DISCUSSION

■ This court must review *de novo* a district court's order dismissing a complaint, accepting all allegations in the complaint as true and construing the facts in a light favorable to the plaintiff. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991).

## I. PRISONERS' RETAINED PRIVACY RIGHTS

We first note that generally, the existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim. A district court, however, may dismiss a complaint on a rule 12(b)(6) motion "when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir.1984), *cert. denied*, 476 U.S. 1124, 106 S.Ct. 1992, 1993, 90 L.Ed.2d 673 (1986). In considering a defendant's motion to dismiss based on qualified immunity, the district court must examine the complaint to determine "whether, under the most favorable version of the facts alleged, defendant's actions violate clearly established law." *Bennett v. Parker*, 898 F.2d 1530, 1535 n. 2 (11th Cir.1990) (Tjoflat, C.J., concurring), *cert. denied*, — U.S. —, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). In this case, the district court granted the appellees' motion to dismiss based on qualified immunity, after concluding that a prisoner's constitutional right to bodily privacy is not a "clearly established right" in this circuit. As to the appellants' claim for damages on the alleged privacy violations, we agree that facts sufficient to give rise to a consideration of qualified immunity appears on the face of the appellants' complaint.

A. In determining whether a government official has violated a clearly established constitutional right, a court must consider whether the contours of the right were sufficiently clear that reasonable officials, at the time of their actions, would have understood that what they were doing violated that right. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). The nonexistence of a decision specifically addressing the alleged right is a significant consideration in determining whether the right is clearly established. *See Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir.1987) (recognizing that a prisoner's First Amendment right not to be disci-

plined when he failed to respond to his committed name is not clearly established based upon general rulings that prisoners retained limited First Amendment rights). In addition, the existence of Supreme Court cases or cases in this circuit that recognize the alleged right is particularly important in determining whether the law is sufficiently clear to a reasonable official. *See Muhammad*, 839 F.2d at 1424–25 & n. 7 (canvassing the cases in this circuit to determine whether an official violated clearly established law, and recognizing that the official's awareness of a district court opinion recognizing the alleged right cannot, of itself, settle the law where the district court sits outside this circuit).

In this case, the district court properly found that neither this court nor the Supreme Court had recognized that a prisoner retains a constitutional right to bodily privacy. *See generally Harris v. Thigpen*, 941 F.2d 1495, 1513 n. 26 (11th Cir.1991) (recognizing that prisoners retain certain fundamental rights of privacy, even though the precise nature and scope of the privacy right is far from settled).

B. It is well established that the doctrine of qualified immunity protects government officials from civil damages liability as long as the officials could reasonably believe that their conduct did not violate clearly established statutory or constitutional rights. *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Relying on our ruling in *Muhammad*, the district court concluded that this court has expanded the doctrine of qualified immunity to shield government officials from not only civil damages liability, but also to protect officials from claims for equitable relief. *See Muhammad*, 839 F.2d at 1424 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985), and concluding that "entitlement to qualified immunity means that the defendants are immune from suit rather than merely immune from liability for damages"). We reject the district court's interpretation of *Muhammad* as establishing an expanded

doctrine of qualified immunity in this circuit.

■ We first note that the language that the district court relied on is mere dicta, because the court in *Muhammad* reviewed only the district court's order denying prison officials qualified immunity from personal liability in a prisoner's section 1983 action. *See Muhammad,* 839 F.2d at 1423. In addition, we are convinced that the language in *Muhammad* stands only for the proposition that government officials may file an interlocutory appeal when a trial court denies a defense of qualified immunity from civil damages liability. For this proposition, the court in *Muhammad* appropriately cites *Mitchell,* 472 U.S. at 524, 105 S.Ct. at 2814, which addresses the issue of whether the denial of qualified immunity from civil damages liability should be immediately appealable as a collateral order because the denial would be effectively unreviewable on appeal from a final judgment. *See Mitchell,* 472 U.S. at 519 n. 5, 523 n. 7, 524–26, 105 S.Ct. at 2812 n. 5, 2814 n. 7, 2814–16 (noting specifically that the case does not involve a claim for injunctive relief, and also noting the continued availability of declaratory or injunctive relief as deterrence to the constitutional violations of a government official). Hence, we are persuaded that the court in *Muhammad* did not depart from the settled proposition that "immunity from damages does not ordinarily bar equitable relief as well." *Wood v. Strickland,* 420 U.S. 308, 314 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975).[1] Accordingly, we hold that the district court erred in dismissing the appellants' claims for injunctive relief based on qualified immunity.

C. Because on remand the district court must consider the appellants' claim for injunctive relief which raises an issue of first impression in this circuit, we now set forth the appropriate standards for reviewing the appellants' claim for injunctive relief

based on alleged violations of their constitutional right to bodily privacy.

■ As a matter of general principle, it is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); *see also Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987) (recognizing that prison walls do not separate inmates from their constitutional rights); *Harris v. Thigpen,* 941 F.2d at 1512 (same). It is also settled that a prisoner's constitutional rights must be exercised with due regard for the "inordinately difficult undertaking" of modern prison administration. *Turner,* 482 U.S. at 85, 107 S.Ct. at 2259; *see also Bell,* 441 U.S. at 547, 99 S.Ct. at 1878 (recognizing that courts must give great deference to the decisions of prison officials relating to the administration of the facility). But, even though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their duty to protect those constitutional rights that a prisoner retains. *Sheley v. Dugger,* 833 F.2d 1420, 1423 (11th Cir.1987); *see also Procunier v. Martinez,* 416 U.S. 396, 405–06, 94 S.Ct. 1800, 1807–08, 40 L.Ed.2d 224 (1974) (recognizing that federal courts will discharge their duty to protect constitutional rights when prison regulations or practices offend fundamental constitutional guarantees), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989).

■ In reviewing the appellants' claim for injunctive relief, the district court's first inquiry must be whether prisoners retain the right to bodily privacy. It is clear that prison inmates " 'retain certain fundamental rights of privacy.' " *Harris,* 941 F.2d at 1513 (quoting *Houchins v. KQED, Inc.,* 438 U.S. 1, 5 n. 2, 98 S.Ct.

---

1. We would effectively freeze the law on prisoners' rights, as well as other individual rights, if this court accepted the district court's interpretation of *Muhammad* to expand the doctrine of

qualified immunity to shield officials from all claims for equitable relief whenever the law was not already clearly established.

2588, 2592 n. 2, 57 L.Ed.2d 553 (1978) and recognizing that "seropositive prisoners enjoy some significant constitutionally protected privacy interests in preventing the non-consensual disclosure of their HIV-positive diagnosis"). As stated previously, this court has declined to define the precise parameters of a prisoner's constitutional right to privacy. *See generally Harris,* 941 F.2d at 1513 n. 26. Although we continue to approach the scope of the privacy right on a case-by-case basis, we now recognize that prisoners retain a constitutional right to bodily privacy.

■■■ We are persuaded to join other circuits in recognizing a prisoner's constitutional right to bodily privacy because most people have "a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating." *Lee v. Downs,* 641 F.2d 1117, 1119 (4th Cir.1981); *see also Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992) (concluding that "we have little doubt that society is prepared to recognize as reasonable the retention of a limited right of bodily privacy even in the prison context"); *Sepulveda v. Ramirez,* 967 F.2d 1413, 1415 (9th Cir.1992) (recognizing that prison inmates retain the right to bodily privacy); *Mitchenfelder v. Sumner,* 860 F.2d 328, 333–34 (9th Cir.1988) (same).

■■■ In determining the merits of the appellants' claim for injunctive relief against prison officials for alleged violations of their constitutional right to bodily privacy, the district court must apply the standard of review for evaluating prisoners' constitutional claims which the Supreme Court articulated in *Turner.* When a prison regulation or policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261. Based on the ruling in *Turner,* this court in *Harris* identified the following four factors governing the reasonableness review of prison regulations:

> (a) whether there is a 'valid, rational connection' between the regulation and a

legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally; and (d) whether the regulation represents an 'exaggerated response' to prison concerns.

*Harris,* 941 F.2d at 1516 (quoting *Turner,* 482 U.S. at 89–91, 107 S.Ct. at 2261–63). We emphasize that the fourth *Turner* factor is not a "least restrictive alternative" test, but rather it allows an inmate to "point to an alternative that fully accommodates the prisoners' rights at *de minimis* cost to valid penalogical interests" as evidence that a restriction is not reasonable. *Turner,* 482 U.S. at 90–91, 107 S.Ct. at 2262–63.

■■■ In sum, we affirm that part of the district court's order dismissing the appellants' claim for monetary damages for violations of their right to privacy, because the prisoners' constitutional right to bodily privacy was not clearly established at the time, making the appellees immune for civil damages liability. We reverse and remand that portion of the district court's order dismissing the appellants' claim for injunctive relief, in light of our recognition that prisoners do retain a limited constitutional right to bodily privacy. Accordingly, we leave it for the district court to apply, in the first instance, the *Turner* "reasonableness" test in determining whether injunctive relief is appropriate for the alleged infringement of the appellants' constitutional rights to bodily privacy.

## II. DUE PROCESS CLAIMS

■■■ The district court dismissed the appellants' due process claims after finding that their claims of unfair disciplinary procedures, including lack of proper notice, admission of evidence, and excessive punishments, are matters properly brought as a contempt action pursuant to the procedures set forth in *Guthrie. See Guthrie v. Evans,* CV No. 3068 (S.D.Ga. July 19, 1978,

August 4, 1978, December 1, 1978) (orders approving consent decrees); *see also Guthrie v. Evans*, 815 F.2d 626, 628–29 (11th Cir.1987) (holding that the district court order approving the consent decree is a final judgment); *Guthrie v. Evans*, 93 F.R.D. 390 (S.D.Ga.1981) (overruling objections to a settlement of contempt proceedings, which class counsel filed on June 17, 1981, seeking compliance with the August 4, 1978 order approving a consent decree). In dismissing the appellants' due process claims, the district court relied on this court's ruling in *Saleem v. Evans*, 866 F.2d 1313 (11th Cir.1989), which held that Georgia prison complaints that parallel those addressed in *Guthrie* may only be filed through *Guthrie* class counsel. *Saleem*, 866 F.2d at 1314. Because we conclude that the district court erred in relying on the ruling in *Saleem*, we reverse and remand the district court's order dismissing the appellants' due process claims.

◼ It is clear that a prisoner's claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief, even if the prisoner is a member of a pending class action. *Spears v. Johnson*, 859 F.2d 853, 854 (11th Cir. 1985) (recognizing that a prisoner's claim for monetary damages was not barred from federal court based on a pending prisoner class action where the class representatives sought only injunctive and declaratory relief), *opinion vacated in part on other grounds*, 876 F.2d 1485 (11th Cir. 1989); *Herron v. Beck*, 693 F.2d 125, 127 (11th Cir.1982) (recognizing that a prisoner was not barred from the federal courts based on a pending class action, because the prisoner sought monetary damages and other specific relief not addressed in the class action which only sought declaratory and injunctive relief); *Bogard v. Cook*, 586 F.2d 399, 408–09 (5th Cir.1978) (recognizing that a prisoner class action does not bar an individual prisoner's subsequent suit for damages, where the class representatives sought only equitable relief, where prison-

ers had insufficient notice of their right to seek individual monetary damages, and where joinder of all individual damage claims would have made the class action unmanageable), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979).[2]

In contrast, the court in *Saleem* was not faced with a prisoner's claim for monetary damages, as well as equitable relief addressed in *Guthrie*. *See Saleem*, 866 F.2d at 1313–14 (involving a section 1983 action alleging violations of prisoner's First and Fourteenth Amendment rights, and apparently seeking only to be provided with a Muslim minister of the appropriate sect to minister to the prisoner's religious needs). Because the class representatives in *Guthrie* sought only injunctive relief for the alleged unconstitutional conditions and practices of the Georgia prison system, the district court erred in dismissing the appellants' complaint which included a claim for monetary damages. *See Spears*, 859 F.2d at 855. Accordingly, we hold that the district court improperly dismissed the appellants' complaint which seeks both injunctive relief and monetary damages for alleged violations of their right to due process in prison disciplinary proceedings.

We note that even though it was not appropriate for the district court to dismiss the appellants' claims for monetary damages based on *Guthrie*, on remand, the district court may properly consolidate the appellants' claims with the class litigation, stay the appellants' action pending referral of their complaints to class counsel, or transfer their case to the *Guthrie* court. *See Herron*, 693 F.2d at 127 (recognizing that it might have been proper to consolidate the plaintiff's claims for monetary damages with the class litigation or to stay the plaintiff's action pending referral of his complaints to class counsel, but that dismissal was not appropriate); 28 U.S.C. § 1406(a) (authorizing a district court to transfer a case to another division or district "in the interest of justice"); *see also Spears*, 859 F.2d at 855 (recognizing that a transfer of a prisoner's claim for monetary

---

2. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981).

damages to the court considering the prisoner class action is appropriate to avoid interference with the integrity of a consent order and also overlap between the complaints of class counsel and the individual prisoner).

## III. RIGHT TO AMEND

◼◼◼◼ Having concluded that the appellants' due process claims are not precluded under *Guthrie*, we hold that the district court erred in denying the appellants' motion to amend their complaint adding the two disciplinary officers as defendants. The appellees contend that their motion to dismiss was a responsive pleading for purposes of rule 15(a). We disagree. It is well established in this circuit that a motion to dismiss is not considered a responsive pleading for purposes of rule 15(a). *Driscoll v. Smith Barney, Harris, Upham & Co.*, 815 F.2d 655, 659 (11th Cir.1987), *vacated in part on other grounds* 484 U.S. 909, 108 S.Ct. 253, 98 L.Ed.2d 211 (1987), *cert. denied in part* 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987); *Chilivis v. Securities & Exchange Comm'n*, 673 F.2d 1205, 1209 (11th Cir. 1982); *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir.1979). Because the appellees had only filed a motion to dismiss, not a responsive pleading, the appellants were entitled to amend their complaint at least once as a matter of course at any time before a responsive pleading was served. Fed.R.Civ.P. 15(a); *McGruder*, 608 F.2d at 1025. Accordingly, we reverse the district court's denial of the appellants' motion to amend their complaint adding the two disciplinary officers as defendants. As the action proceeds on remand, the district court may, of course, entertain any appropriate motion from the defendants regarding their presence in this case. We hold only that the district court erred in denying the appellants' motion to amend their complaint before the appellees filed a responsive pleading.

## CONCLUSION

We affirm the order of the district court dismissing the appellants' claims for mone-

tary damages for alleged violations of their right to bodily privacy, based on its correct conclusion that a prisoner's constitutional right to bodily privacy was not clearly established at the time. We, however, reverse and remand the district court's order dismissing the appellants' claims for injunctive relief based on alleged violations of their constitutional rights to bodily privacy. We now recognize that a prisoner retains a constitutional right to bodily privacy. On remand, the district court must apply the "reasonableness" test articulated in *Turner* in reviewing whether the prison regulations unreasonably impinge on that constitutional right to bodily privacy.

In addition, we reverse and remand the district court's order dismissing the appellants' due process claims, because dismissal of a prisoner's complaint which includes a claim for monetary damages is inappropriate when dismissal is based on a class action in which the class representatives sought only declaratory and injunctive relief. On remand, the district court may dispose of the appellants' due process claims with a transfer to the *Guthrie* court or other appropriate means. We also reverse and remand the district court's denial of the appellants' motion to amend their complaint adding the two disciplinary officers as defendants.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.