HOLLOWAY, Circuit Judge,
concurring and dissenting:
I am in agreement with much of the Majority Opinion concerning the Religious Freedom Restoration Act (RFRA). In particular, I agree with that opinion that the district court was in error in stating that RFRA had been declared unconstitutional by City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Flores did not determine the constitutionality of the RFRA as applied to the federal government; the Court there decided that Congress exceeded its power to enforce the Fourteenth Amendment as applied to the States. Moreover, I agree with the Majority Opinion that RFRA is constitutional as applied to the federal government, and that such portion of the statute can and should be severed from the portion of RFRA declared unconstitutional in Flores. Therefore I am in agreement that we should apply the requirement of RFRA that “Government shall not substantially burden a person’s exercise of religion.” 42 U.S.C. § 2000bb-l(a). I fur *964 ther agree with the Majority Opinion in remanding the RFRA claim, as discussed below.
However, I am unable to join the analysis of the Majority Opinion concerning the First Amendment free exercise claim of Plaintiff Kikumura. As recognized in Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), protective measures for security in the prison context must be “reasonably related to legitimate penological interests.” I have a fundamental difference with the Majority Opinion concerning application of the Regulation in question here, 28 C.F.R. § 548.19. My concern is that the Regulation imposes a strict limitation on pastoral visits to those from clergy or representatives of an inmate’s one declared faith. That to me is an impermissible restriction because it is not “reasonably related to legitimate peno-logical interests.” Turner, 482 U.S. at 89, 107 S.Ct. 2254.
Therefore, I cannot agree to uphold the regulation banning all pastoral visitors of other faiths. Holding such a broad ban invalid under the Turner standard as not reasonably related to legitimate penological interests does not violate the teaching of O’Lone v. Shabazz, 482 U.S. 342, 353, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), not to substitute our judgment on institutional administration for that of “those charged with the formidable task of running a prison.”
The Majority Opinion correctly notes that among the factors identified by the Supreme Court for determining whether a regulation is reasonably related to a legitimate penological interest is whether there are obvious alternatives to the prison’s regulation. Turner, 482 U.S. at 91, 107 S.Ct. 2254. I believe that in this case such obvious alternatives are readily available to the Defendants; if the Defendants are troubled by the number of religious visits sought, or by information about the persons seeking to contact inmates as clergy visitors, there are obvious, reasonable alternative measures which can afford straightforward protections. For instance, the Defendants can limit the number and frequency of pastoral visits to those which the inmate favors or the Defendants can limit the number and frequency of visits to levels they deem reasonable to maintain security. Additionally, the clergy seeking to make pastoral visits can be scrutinized for any potentiality of danger. Indeed, the Regulation itself notes the availability of such protective measures by providing in § 548.19(a) that the “chaplain may request a NCIC check and documentation of such clergyperson’s or faith group representative’s credentials.”
Here, instead of using these recognized alternatives, the Defendants’ policy is to impose a general ban on pastoral visitors not qualifying as representatives of the inmate’s one declared faith. That broad ban reflects an “undifferentiated fear or apprehension” without any evidentiary background for the imagined threat. Cf. Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (invalidating student arm band prohibition based on “undifferentiated fear or apprehension” of disturbance as not sufficient to overcome First Amendment freedom of expression).
I find no vice in a requirement that an inmate identify the faith with which he is affiliated as part of the procedure to request pastoral visits. Thus I do not suggest striking down that requirement. My objection is with what follows — the unjustified use of that identification of the inmate’s faith as a means of restricting to that one faith those from whom pastoral visits or counseling is permitted and the banning of all other pastoral visitors. Where, as here, the enrichment of other religious support is desired, the restriction prohibiting such support makes no sense in light of “the existence of obvious easy alternatives” which serve the same security interests suggested by the Defendants and which the Supreme Court has determined “may be evidence that the regulation is not reasonable, but is an ‘exaggerat *965 ed response’ to prison concerns.” Turner, 482 U.S. at 90,107 S.Ct. 2254.
Turner teaches that:
if an inmate claimant can point to an alternative that fully accommodates the prisoner’s rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.
482 U.S. at 91, 107 S.Ct. 2254; see also Lile v. McKune, 224 F.3d 1175, 1191 (10th Cir.2000) (stating that a court should look, inter alia, to “whether there are obvious, easy-to-implement alternatives that would accommodate the prisoner’s right at little cost to valid penological interests”); Abu-Jamal v. Price, 154 F.3d 128, 135 (3d Cir.1998) (holding defendant was “likely to show that the Department’s discriminatory application of the business or profession rule to his writing is an exaggerated response to the Department’s security objectives because there are obvious easy alternatives to address the Department’s concerns”); Mauro v. Arpaio, 147 F.3d 1137, 1144 (9th Cir.1998) (“The availability of ‘obvious, easy’ alternatives that could be implemented at a ‘de minimis ’ cost [weighs] against the reasonableness of a regulation.”); Thomas v. Gunter, 32 F.3d 1258, 1260 (8th Cir.1994); Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir.1993) (“We emphasize that the fourth Turner factor is not a ‘least restrictive alternative’ ” test, but rather it allows an inmate to point to an alternative that fully accommodates the prisoners’ rights at de minimis cost to valid penological interests as evidence that a restriction is not reasonable.”).
This circuit’s opinion in Mann v. Reynolds, 46 F.3d 1055 (10th Cir.1995), is instructive. It concerned a challenge brought by state inmates to a prison regulation prohibiting death row and maximum security prisoners from having “barrier-free or contact visits” with counsel, on the ground that it violates the inmate’s rights under the Sixth and Fourteenth Amendments. Id. at 1056. Applying the four-factor Turner test, this court found “a lack of rationality in the denial of contact visits between Inmates and their counsel” since the prison allowed those same inmates “unfettered personal contact with virtually all those with whom they interact except their lawyers.” Id. at 1060. We declared:
Thus, we find it disturbing in the Turner context the defendants have not provided an explanation why they have singled out attorneys for the restricted contact. Aside from the isolated occasions when cigarettes, chewing gum, pens, and paper clips have been unwittingly passed by uninitiated lawyers to Inmates, defendants loere unable to provide any evidence the restrictions on contact were reasonably related to prison security. When this default is coupled with the overlay of the “blanket adversarial” attitude of the defendants specifically towards OIDS attorneys and the lack of restriction on contact between Inmates and others, Turner suggests the limitation on contacts between lawyers and clients is not related to a legitimate pe-nological interest.
Id. at 1060-61 (emphasis added). Likewise here the Defendants have not provided evidence that pastoral visitors who are not of the same one declared faith as the Plaintiff present any threat to prison security because of their faith. As noted, other concerns about those pastors as a security threat are fully addressed by other measures.
Accordingly, I must dissent from the Majority Opinion’s holding that Plaintiff Kikumura has not demonstrated a substantial likelihood of success on his First Amendment claim; but, as noted, I agree with the Majority Opinion that Plaintiff should have an opportunity to prove his allegations that Reverend Rickard is well suited to provide religious assistance to Plaintiff and to consider the Defendants’ showing on security interests under the *966 standard imposed on the Government under RFRA.[1]
Turning to Plaintiff Kikumura’s RFRA claim, I am in agreement with the analysis and disposition made in the Majority Opinion. It notes that RFRA provides that “Government shall not substantially burden a person’s exercise of religion.” 42 U.S.C. § 2000bb-l(a). It also notes the passage of the Religious Land Use and Institutionalized Persons Act of 2000, codified at 42 U.S.C. § 2000cc. The latter statute amended the RFRA and its definition ' of “exercise of religion” so that the term now means “any exercise of religion, whether or not compelled by, or central to a system of religious belief.” I join the Majority Opinion in remanding the RFRA issue to allow the Plaintiff Kikumura an opportunity to provide evidentiary support for his RFRA claim. If Plaintiff is able to prove his allegations that Reverend Rick-ard is well suited to provide religious assistance to Plaintiff, he will have shown a basis for his claim that denial of pastoral visitation by Reverend Rickard is a substantial burden to Plaintiffs exercise of religion. I am agreeable to the remand for this purpose and so that the Defendants may present any showing they may have on security issues which they claim to be involved.
There remain the issues of the Plaintiff Kikumura’s claim of infringement of his equal protection rights and the Defendants’ qualified immunity defense. I join the Majority Opinion in holding that Plaintiff has not demonstrated a substantial likelihood of success on his equal protection argument, and in the holding that the qualified immunity defense does not apply to claims for equitable relief.

. I am mindful that if the Plaintiff prevails on his First Amendment free exercise claim it may not be necessary to go further to consider his RFRA claim. By the enactment of RFRA Congress has extended enlarged protection for the free exercise of religion. Not being in the majority, it seems proper to me to state my views on both the First Amendment claim and the statutory RFRA claim.