Justice Ginsburg,
dissenting.
Justice Stevens comprehensively explains why the justifications advanced by the Secretary of Pennsylvania’s Department of Corrections (Secretary) do not warrant pretrial dismissal of Ronald Banks’s complaint alleging arbitrary deprivation of access to the news of the day. Ante, p. 542. Joining Justice Stevens’ dissenting opinion in full, I direct this separate writing to the plurality’s apparent misapprehension of the office of summary judgment.
As the plurality recognizes, ante, at 529, there is more to the summary judgment standard than the absence of any genuine issue of material fact; the moving party must also show that he is “entitled to a judgment as a matter of law.” Fed. Rule Civ. Proc. 56(c); Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 249-255 (1986); id., at 250-251 (summary judgment is unwarranted “[i]f reasonable minds could differ as to the import of the evidence”). Here, the Secretary cannot *554 instantly prevail if, based on the facts so far shown and with due deference to the judgment of prison authorities, a rational trier could conclude that the challenged regulation is not “reasonably related to legitimate penological interests.” Turner v. Safley, 482 U. S. 78, 89 (1987).
The showing made by the Secretary in support of summary judgment is slim, the kind that could be made to justify virtually any prison regulation that does not involve physical abuse. The Secretary relies on his own statement of undisputed facts and the deposition of the prison’s Deputy Superintendent. The deposition states that “obviously we are attempting to do the best we can to modify the inmate’s behavior so that eventually he can become a more productive citizen .... We’re very limited ... in what we can and cannot deny or give to an inmate, and [newspapers and photographs] are some of the items that we feel are legitimate as incentives for inmate growth.” App. 189,190. The Secretary’s statement of undisputed facts similarly asserts that the regulation “serves to encourage ... progress and discourage backsliding.” Id., at 27.
These statements, the plurality holds, are sufficient to show that the challenged regulation is reasonably related to inmate rehabilitation. Ante, at 531-532. But prison officials “ ‘cannot avoid court scrutiny by reflexive, rote assertions.’” Shimer v. Washington, 100 F. 3d 506, 510 (CA7 1996) (quoting Williams v. Lane, 851 F. 2d 867, 886 (CA7 1988) (Flaum, J., concurring in result)). See also Turner, 482 U. S., at 98 (noting lack of evidence offered by prison officials to support a ban on inmate marriages); Murphy v. Missouri Dept. of Corrections, 372 F. 3d 979, 986 (CA8 2004) (applying Turner and concluding that the Corrections Department’s “documented reason for censoring [a magazine] is too eonclusory to support [summary] judgment in its favor”); Jacklovich v. Simmons, 392 F. 3d 420, 428-434 (CA10 2004). “ ‘[Traditional deference does not mean that courts [are to] *555 abdicate] their duty to protect those constitutional rights that a prisoner retains.’” 399 F. 3d 134, 140 (CA3 2005) (quoting Fortner v. Thomas, 983 F. 2d 1024, 1029 (CA11 1993)).
The plurality correctly recognizes that it “must draw ‘all justifiable inferences’ in Banks’[s] ‘favor.’” Ante, at 529 (quoting Liberty Lobby, All U. S., at 255). It then backtracks, distinguishing “evidence of disputed facts” from “disputed matters of professional judgment,” and asserts that “[i]n respect to the latter, our inferences must accord deference to the views of prison authorities.” Ante, at 530. While Turner deference can and should be incorporated into the evaluation of a motion for summary judgment, that deference should come into play, pretrial, only after the facts shown are viewed in the light most favorable to the nonmoving party and all inferences are drawn in that party’s favor. See Liberty Lobby, 477 U. S., at 252-255; cf. Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. 133, 150-151 (2000).
As I see it, on the limited record thus far made and without the benefit of trial, “the logical connection between the [no news journals] regulation and the asserted goal” could be found by a reasonable trier to be “so remote as to render the policy arbitrary or irrational.” Turner, 482 U. S., at 89-90. The regulation denies The Christian Science Monitor to inmates housed in level 2 of the prison’s long-term segregation unit but allows them The Jewish Daily Forward, based on the determination of a prison official that the latter qualifies as a religious publication and the former does not. App. 179-180; 399 F. 3d, at 147. Prisoners are allowed to read Harlequin romance novels, but not to learn about the war in Iraq or Hurricane Katrina. The first justification cited by prison officials for impinging on inmates’ First Amendment rights in this way is too tenuous to be plausible. See ante, at 543-546 (Stevens, J., dissenting) (discussing security ra *556 tionale); 399 F. 3d, at 142-144 (same). The second could be recited, routinely, to immunize all manner of prison regulations from review for rationality. See ante, at 546-552 (Stevens, J., dissenting) (discussing deprivation/“rehabilitation” rationale); 399 F. 3d, at 140-142 (same).
Turner came to us after a full trial, and the Court’s opinion in that case relied heavily on testimony elicited at trial in evaluating the reasonableness of the regulations at issue. 482 U. S., at 91-93, 96-99. Overton likewise came to this Court on a record made at trial. Overton v. Bazzetta, 539 U. S. 126, 133 (2003). But in this case, the defender of the regulation invites summary judgment. All inferences are to be drawn in favor of the prisoner opposing the regulation, and the question is not which side has the better argument, but whether the Secretary has shown he is entitled to a judgment as a matter of law. By elevating the summary judgment opponent’s burden to a height prisoners lacking nimble counsel cannot reach, the plurality effectively tells prison officials they will succeed in cases of this order, and swiftly, while barely trying. It suffices for them to say, in our professional judgment the restriction is warranted. The asserted right to read, see ante, at 543 (Stevens, J., dissenting), is indeed an “important one,” see ante, at 535 (plurality opinion of Breyer, J.). Even in highest security custody, a constitutional interest of that order merits more than peremptory treatment.
* * *
For the reasons stated by Justice Stevens and in this opinion, I would affirm the Third Circuit’s judgment reversing the award of summary judgment to the Secretary.