[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12855
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cv-63017-WPD

ERIC WATKINS,

Plaintiff-Appellant,

versus

MARK PINNOCK,
Broward Sheriff's Office Deputy,
ELIAS PINO,
Broward Sheriff's Office Deputy,
LUIS GALINDEZ,
Broward Sheriff's Office Deputy,
STEVIE THOMAS,
Broward Sheriff's Office Deputy,
DANNY POLK,
Broward Sheriff's Office Deputy, et al.,

Defendants-Appellees,

BROWARD COUNTY JAIL MEDICAL STAFF, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 22, 2020)

Before JORDAN, ROSENABUM and NEWSOM, Circuit Judges.

PER CURIAM:

Eric Watkins, proceeding *pro se*, appeals following a jury's verdict in his 42 U.S.C. § 1983 action in favor of Broward Sheriff's Office (BSO) Jail Deputies Mark Pinnock, Elias Pino, Luis Galindez, Stevie Thomas, Danny Polk, and Gregory Gordon.  On appeal, Watkins argues that the district court erred by (1) dismissing Counts III and IV of his fifth amended complaint, in which he alleged deliberate indifference to a serious medical need, in violation of the Fourteenth Amendment; (2) dismissing Count V, in which he alleged a widespread custom or practice of deliberate indifference to the use of excessive force against BSO pretrial detainees, in violation of the Fourteenth Amendment; and (3) granting summary judgment in favor of the deputies on Count VI, in which he alleged an unreasonable strip search, in violation of the Fourth Amendment.  Further, Watkins claims that the district court abused its discretion by precluding his late-disclosed witnesses, denying his motions for appointment of counsel and continuance, and committing numerous evidentiary errors at trial.  Finally, Watkins asserts that the

2

court erred in its jury instructions.  As the facts of this case are familiar to the parties and the issues presented are legion, we'll dive right into the merits of Watkins's appeal, addressing each issue in turn.

## I

## A

"We review *de novo* the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff."  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) (quotation omitted).  The complaint must contain enough facts to "raise a right to relief above the speculative level."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  *Pro se* pleadings are liberally construed and held to less stringent standards than those drafted by lawyers.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

"[A] district court must grant a plaintiff at least one opportunity to amend [his] claims before dismissing them if it appears a more carefully drafted complaint might state a" sufficient claim for relief.  *Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003) (internal quotation marks and citation omitted).  Leave to amend a complaint is futile when the complaint as amended would still be properly

3

dismissed or be immediately subject to summary judgment for the defendant. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004).

A pretrial detainee's claim of deliberate indifference to a serious medical need falls under the Fourteenth Amendment's Due Process Clause. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann*, 588 F.3d at 1306–07.

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (internal quotation marks and citation omitted). "[I]f left unattended," a serious medical need "poses a substantial risk of serious harm." *Id.* (quotation marks and citation omitted). "[T]o prove that a [defendant] acted with deliberate indifference, [a plaintiff] must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and

(3) conduct that is more than mere negligence" or a "mistake in judgment." *Id.* at 1307–08 (internal quotation marks and citation omitted).

## B

Here, the district court did not err in dismissing Counts III and IV with prejudice. Even assuming that Watkins sufficiently alleged a serious medical need, his assertion that the medical staff were deliberately indifferent to that need is belied by his own factual allegations indicating that several nurses, on multiple occasions, observed his injuries and listened to his concerns. Moreover, the court properly determined that his proposed amendments would not have cured the deficiencies in his fifth amended complaint. Watkins was allowed to amend his complaint as applied to the nurses previously, and his new proposed amendments—adding allegations that he told the nurses he could not sit without pain and could only walk slowly—would not have cured the complaint's fundamental defects. *Silva*, 351 F.3d at 1048–49; *Hall*, 367 F.3d at 1263.

## II

## A

A plaintiff cannot raise a claim of municipal liability under 42 U.S.C. § 1983 based on the doctrine of *respondeat superior*. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Rather, a plaintiff must "identify a municipal policy or custom that caused [his] injury." *Id.* (alteration in original) (internal

5

quotation marks and citation omitted).  To establish a municipal policy, the plaintiff must "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the" municipality.  *Id.*

To prove § 1983 liability based on an unofficial custom or practice, "a plaintiff must establish a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law."  *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (internal quotation marks and citation omitted).  We have stated that, "for constitutional violations to be sufficiently 'widespread' for a governmental supervisor to be held liable, they need occur with frequency."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir. 2004) (quotation omitted).

## B

Here, the district court did not err in dismissing Count V with prejudice, as Watkins failed to sufficiently allege that the BSO had a widespread custom or practice of allowing its deputies to use excessive force against pretrial detainees. Although he claimed that numerous pretrial detainees had filed complaints about excessive force, he only marshalled one additional example of such a filing in his complaint.  Watkins's conclusory allegations are insufficient to survive dismissal. Moreover, the court gave Watkins several chances to amend his complaint as to

this count and properly determined that his repeated failure to state a claim for relief evidenced the futility of any additional amendments.

## III

## A

We review *de novo* a district court's grant of summary judgment based on qualified immunity. *See Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). "[T]he principle of qualified immunity . . . shield[s] government officials performing discretionary functions from exposure to damages liability unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton*, 483 U.S. 635, 647–48 (1987) (citation omitted). When resolving questions of qualified immunity at summary judgment, we ask two questions: (1) whether—when taking the facts in the light most favorable to the plaintiff—the officer violated the plaintiff's federal rights; and (2) whether those rights were "clearly established" when the violation occurred. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). "Courts have discretion to decide the order in which to engage these two prongs," but they may not, under either prong, "resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* at 656.

Under the second prong, a "right is clearly established if a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his

7

actions violate federal law." *Fils*, 647 F.3d at 1291 (alteration in original) (internal quotation marks and citation omitted). We have stated that a government actor is not entitled to qualified immunity when his conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to" him. *Id.* (internal quotation marks and citation omitted).

"[P]risoners retain a constitutional right to bodily privacy." *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993). We have stated that the Fourth Amendment does not require reasonable suspicion for body cavity inspection searches in detention facilities, and it is not a violation of the Fourth Amendment to strip search an arrestee as part of the booking process, so long as it is done in a non-abusive and reasonable manner. *Powell v. Barrett*, 541 F.3d 1298, 1308, 1314 (11th Cir. 2008) (en banc).

## B

Here, the district court did not err in granting summary judgment on Count VI, as the deputies were entitled to qualified immunity. Given precedent indicating that a reasonable visual body cavity search of an inmate during the booking process is not a violation of the Fourth Amendment, *see, e.g.*, *Powell*, 541 F.3d at 1308, 1314, we cannot say that a reasonable officer in the deputies' position would have believed that a strip search was unjustified or violated Watkins's Fourth Amendment rights: The search was conducted by all men in a

8

dedicated strip-search room, Watkins had been singing a song with violent and threatening lyrics, and he admits that he had been arguing with Deputy Pinnock as he was escorted to the jail.

## IV

### A

We review the exclusion of late-disclosed witnesses for an abuse of discretion. *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008). We "consider the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party [if the witness had been allowed to testify.]" *Id.* (alteration in original) (quotation marks and citation omitted).

### B

Here, the district court did not abuse its discretion in excluding several late-disclosed witnesses. The court set a discovery deadline for December 20, 2017 and an initial trial date of April 16, 2018, but Watkins did not serve his Rule 26(e) supplemental disclosures until March 30, 2018, months after the deadline and only two weeks before the scheduled trial date. And, one of Watkins's late-disclosed witnesses was ultimately allowed to testify, as the court found that the deputies would not be prejudiced by her relevant testimony. The court was within its discretion to find that the rest of Watkins's late-disclosed witnesses lacked

relevant testimony, and that their untimely disclosure shortly before the trial date would have been prejudicial.

## V

## A

We review the denial of a motion for appointment of counsel for abuse of discretion. *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999).

"A plaintiff in a civil case has no constitutional right to counsel." *Id.* at 1320. Appointment of counsel in a civil case is "a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (alteration in original) (internal quotation marks and citation omitted). "The key is whether the *pro se* litigant needs help in presenting the essential merits of his . . . position to the court." *Id.* "Where the facts and issues are simple, he . . . usually will not need such help." *Id.* The following factors are considered when determining whether exceptional circumstances exist: "(1) the type and complexity of the case; (2) whether the [litigant] is capable of adequately presenting his case; (3) whether the [litigant] is in a position to [adequately investigate] the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination." *See Ulmer v. Chancellor*, 691

10

F.2d 209, 213 (5th Cir. 1982) (citations omitted); *see also Fowler v. Jones,* 899

F.2d 1088, 1096 (11th Cir. 1990) (recognizing that the Fifth and Eleventh Circuits

apply "the same 'exceptional circumstances' standard" and finding no exceptional

circumstances, when, among other factors, the plaintiff's claims were

straightforward and based mostly on incidents he witnessed).

## B

Here, the district court was within its broad discretion to deny Watkins's

motion for appointment of counsel based on its finding that there were no

extraordinary circumstances in this case.  His claims for relief were neither novel

nor complex, they almost exclusively involved incidents he witnessed himself, and

he submitted an extensive complaint, successfully defended against summary

judgment on Count II, thoroughly responded to the defendant's motions, and filed

three appellate briefs.

## VI

### A

"We review the disposition of requests for trial continuances for abuse of

discretion."  *United States v. Bowe*, 221 F.3d 1183, 1189 (11th Cir. 2000).  "The

denial of a continuance is within the broad discretion of the district court and will

not be overturned unless arbitrary or unreasonable."  *Hashwani v. Barbar*, 822

F.2d 1038, 1040 (11th Cir. 1987).  In reviewing a denial of a request for a

continuance, we consider several factors, including (1) the diligence of the party requesting the continuance to ready the case prior to hearing date; (2) the likeliness "that the need for a continuance could have been met if the continuance had been granted"; (3) "the extent to which granting the continuance would have inconvenienced the court and the opposing party, including its witnesses"; and (4) "the extent to which the appellant might have suffered harm as a result of the . . . denial." *Id.* (quoting *United States v. 2.61 Acres of Land*, 791 F.2d 666 (9th Cir. 1985)).

## B

Here, the district court did not abuse its discretion in denying a continuance. The trial date had already been scheduled around several of the deputies' scheduling conflicts, and Watkins had affirmed that he would be ready by that date. Additionally, the arresting officers Watkins wanted to subpoena—the reason he requested a continuance—were not relevant to the issues at trial, as the deputies had stipulated to the testimony those officers would have presented. Rescheduling the trial would have inconvenienced the court and the deputies, and Watkins has failed to show that he suffered any harm as a result of the denial of his motion.

12

## VII

### A

"We review evidentiary rulings for an abuse of discretion." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014). "The district court has wide discretion in determining the relevance of evidence produced at trial." *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005). "We overturn evidentiary rulings only when the moving party has proved a substantial prejudicial effect." *Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir. 1997).

### 1

The Federal Rules of Evidence provide that a district court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). Further, Federal Rule of Evidence 404(b) prohibits the introduction of prior bad acts to prove a defendant's bad character or that he acted in conformity therewith, but such evidence may be introduced to demonstrate—among other things—a defendant's motive or pattern. Cross-examination is limited to the subject matter of the preceding direct examination and issues regarding the credibility of the witness. *Id.* at 611(b). The district court, however, has discretion to determine the scope of questioning allowed on cross-

13

examination. *United States v. Jones*, 913 F.2d 1552, 1564 (11th Cir. 1990).

Finally, a lay witness may only offer opinions that are "rationally based on [his]

perception." Fed. R. Evid. 701(a).

## 2

Here, Watkins contests the district court's evidentiary rulings regarding (1)

evidence of the deputies' prior conduct, including their disciplinary histories and

prior uses of excessive force; (2) the introduction of police policies and internal

affairs letters; and (3) the deputies' financial status. The district court did not

abuse its discretion in sustaining the deputies' objections, excluding irrelevant or

improper evidence, and limiting the scope of Watkins's questions as to these

issues. Watkins himself admitted that the evidence of prior conduct would

demonstrate the deputies' "[j]ob character," which is prohibited under Federal Rule

of Evidence 404(b). Additionally, the court allowed Watkins to read portions of a

departmental policy manual and his internal affairs letters at trial. Finally, the

court was within its discretion to sustain an objection to questions about the

deputies' financial status, when no case for liability had yet been presented to the

jury.

## 3

Watkins also argues that the district court erred by preventing him from

asking Deputy Galindez about (1) why his prior statements mentioned nothing

14

about being informed by booking staff that Watkins was unruly or disruptive; (2) why certain records had not been disclosed; and (3) whether Galindez had conferred with his lawyers about the facts of the case.  He also argues that he was wrongly prevented from impeaching Deputies Thomas and Pino and Lieutenant James about how their prior statements and reports had not stated that he was violent or disruptive.

None of the district court's rulings with respect to these issues was an abuse of discretion.  Deputy Galindez had no personal knowledge of why certain records were not disclosed to Watkins, and any of his communications with his lawyers were squarely covered by attorney-client privilege.  With respect to Watkins's attempts to impeach numerous officers based on alleged omissions of critical information about his violent/unruly behavior in their prior statements or reports, the district court continuously explained that the mere fact that certain statements were not included in a report is not cause for impeachment by omission—the reports were admitted into evidence, and Watkins was allowed to discuss any relevant omissions during closing.

**4**

Watkins further argues that the court erred by allowing Deputy Gordon to testify that the "anti[-]gay" song Watkins had been singing upon entering the jail was discriminatory, letting the deputies cross-examine outside the scope of direct

15

while he was prevented from asking similar questions on redirect, stopping him from asking Deputy Pinnock a hypothetical question about a discriminatory song, and not allowing him to prove that he had a right to play amplified music in the park (the reason he was arrested in the first place).

The district court did not abuse its discretion as to any of the above issues. Watkins was simply incorrect that Deputy Gordon could not discuss the discriminatory nature of the song, as he misinterpreted the court's summary-judgment order on Count II as making an affirmative statement of law that the song was not discriminatory, which it did not. In addition, the court appropriately managed the scope of cross-examination and redirect. Finally, the court correctly informed Watkins that it was the judge's job—not his—to instruct the jury on the law, and that he was free to discuss his arguments about his right to play music at closing.

* * *

In summary, the court was well within its discretion to exercise reasonable control over the mode and order of examining witnesses and presenting evidence, and Watkins has not shown that he was substantially prejudiced by any of the court's evidentiary rulings. *See Adams*, 754 F.3d at 1248 (stating that evidentiary errors are harmless if the party's substantial rights are not prejudiced).

16

**B**

**1**

We review a district court's admission of expert testimony under a "deferential abuse-of-discretion standard," even where the decision is "outcome determinative." *Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) (quotation omitted). We will defer to a district court's decision "unless it is manifestly erroneous." *Id.* (quotation omitted). A district court judge has "no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

**2**

Watkins argues that the district court erred by not allowing him to call the deputies' expert witnesses as his own or testify about his own x-rays. He also asserts that the court erred in overruling his objection to an expert witness's testimony about his medical records and mental health, in sustaining asked-and-answered objections, and in failing to sua sponte inform him that he could have prepared a rebuttal witness to challenge the testimony of the deputies' expert witness.

The district court did not abuse its discretion with respect to expert testimony. Watkins was able to cross-examine the deputies' expert witness at length, and the expert witness testified well within the scope of his medical

17

expertise, whereas Watkins was not qualified to testify about his x-ray records. Moreover, the court had no obligation to counsel Watkins in rebutting the expert, *see Pliler*, 542 U.S. at 231, and it did not abuse its discretion by sustaining objections to many of Watkins's repetitive questions.

**C**

**1**

"We review [an appellant's] claim that the district court improperly limited the scope of his [witness examination] for a clear abuse of discretion." *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir. 2009). In conducting a trial, the district court "may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those previously presented, and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion." *United States v. Hill*, 643 F.3d 807, 845 (11th Cir. 2011) (quotation omitted). "The discharge of this responsibility necessarily entails the exercise of discretion." *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1477 (11th Cir. 1984); *see also Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1346 (11th Cir. 2005) (holding that the court did not abuse its discretion where "the record show[ed] that the district court exercised reasonable control in managing the flow of the trial by

18

establishing time limits," and the appellant provided no "evidence that the court acted inflexibly or unreasonably with respect to such time restrictions").

**2**

Here, the district court did not abuse its broad discretion by imposing time limits on Watkins's direct examinations, as such restrictions were only imposed in order to properly manage the flow of the trial. Indeed, the court imposed these restrictions only after multiple warnings, and after Watkins had a dramatic outburst in an examination, in which he called a witness on the stand a racial slur. Further, the court was not inflexible with its limitation and made reasonable accommodations when necessary. The Court also did not restrict Watkins's lengthy narrative during his direct testimony.

**VIII**

**A**

"We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party, but the district court is given wide discretion as to the style and wording employed in the instructions." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (quotation omitted). A court's refusal to issue a jury instruction is reviewed only for an abuse of discretion. *Id.* "[A]n abuse of discretion is committed only when (1) the requested instruction correctly stated the law, (2) the instruction dealt with

an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Id.* (alterations, internal quotation marks, and citation omitted).  "Jury instructions are subject to harmless error review." *Fid. Interior Constr., Inc. v. Se. Carpenters Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, 675 F.3d 1250, 1259 (11th Cir. 2012) (quotation omitted).

**B**

We have held that, "[w]hile the Fourth Amendment prevents the use of excessive force during arrests, . . . it is the Fourteenth Amendment that" prevents the use of excessive force against pretrial detainees.  *Piazza v. Jefferson Cty.*, 923 F.3d 947, 952 (11th Cir. 2019) (citation omitted).  We have stated that, "inasmuch as it entails an inquiry into the objective reasonableness of the officers' actions, the Fourteenth Amendment standard has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment." *Id.* at 952–53.  Specifically, a Fourth Amendment excessive-force inquiry asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," *Graham v. Connor*, 490 U.S. 386, 397 (1989), whereas a Fourteenth Amendment inquiry asks whether "the force purposely or knowingly used against [a pretrial detainee] was objectively unreasonable," without regard to "an officer's

20

subjective intent to harm," *Piazza*, 923 F.3d at 952 (quotation omitted).  We have previously noted that "protection under the Fourth Amendment standard . . . is commonly an easier standard for a plaintiff to meet."  *Hicks v. Moore*, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005).

Watkins correctly asserts that the district court erred in citing to the Fourth Amendment in its jury instructions as to the excessive-force claim, because the Fourteenth Amendment governs the use of excessive force on pretrial detainees. Nevertheless, this was harmless error, as the Fourth Amendment objective-reasonableness inquiry is nearly identical to the Fourteenth Amendment standard and was, if anything, a more lenient standard for Watkins to meet.

## C

Watkins also argues that the jury instructions incorrectly stated that the deputies used a show of force to perform the booking and that they conducted a "strip search."  He also asks the court to review for plain error the fact that (1) the excessive-force instructions did not describe the deputies' actions as he had alleged them; (2) the punitive-damages instruction did not state which federally protected rights were applicable; and (3) the unlawful-search instruction failed to indicate the acts that he had to prove or any information about punitive damages.  He also argues that he did not have an opportunity to read over and object to the jury

21

instructions, and that the court did not instruct the jury on the law regarding discriminatory speech.

Here, the court had broad discretion over the wording and style of its jury instructions, and Watkins has failed to show any prejudicial harm from the court's rejection of his requested instructions. In particular, he was given more than the hour he had requested to review the jury instructions, and any damages-related errors cannot have prejudiced Watkins, as the jury found no liability on all counts.

Accordingly, we affirm.

**AFFIRMED.**